UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

REGENTS OF THE UNIVERSITY OF
MINNESOTA,                                                      Case No.

               Plaintiff,                              **COMPLAINT**

v.

DOUGLAS QUADE, and JOHN DOES 1-50

               Defendant.

---

Plaintiff Regents of the University of Minnesota ("the University") as governing board

for the University of Minnesota brings this action for damages and permanent injunctive relief

against Defendants Douglas Quade ("Defendant") and John Does 1-50, for their unauthorized

sale, conditioning, and dispensing without proper notice, of Plaintiff's proprietary oat varieties,

as well as instigating and actively inducing violations of one or more prohibited acts by others,

all in violation of Plaintiff's rights under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et

seq.* ("PVPA").

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331, as Plaintiff's

claims arise under the laws of the United States, and 28 U.S.C. § 1338, which provides that

district courts have original jurisdiction over any civil action arising under any Act of Congress

relating to plant variety protection.

2.	Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims occurred in this district and the Defendants reside in this district.

**THE PARTIES**

3.	Plaintiff Regents of the University of Minnesota is a leading public institution of higher education and advanced research created by charter and perpetuated by the Constitution of the State of Minnesota, Article XIII, Section 3.  The University enjoys the power to sue, to hold, lease, and manage, for the purposes for which they were established, any property belonging to the educational institutions under its control, collectively or severally. The University is the owner of the Plant Variety Certificate of Protection.

4.	The University encourages institutions under its control to pursue research, to protect intellectual properties arising from such research and to enter into such agreements as may be necessary and proper to license or otherwise to provide for the commercial application of research results.

5.	Defendant Douglas Quade is an individual residing in or around Jeffers, Minnesota. He operates a seed production and farming business and has intentionally and directly infringed the intellectual property rights of Plaintiff by, among other things, knowingly selling, marketing, offering for or exposing for sale, delivering, shipping, consigning, exchanging, or soliciting an offer to buy Plaintiff's PVPA-protected oat varieties, without authority and in violation of the PVPA laws.

6.	Defendants John (or Jane) Doe 1-50 have infringed the intellectual property rights of Plaintiff by, among other things, selling, marketing, offering for or exposing for sale, delivering, shipping, consigning, exchanging, or soliciting an offer to buy Plaintiff's PVPA-

protected oat varieties, in conjunction with Defendant Quade but without authority of Plaintiff, in violation of the PVPA laws.

7.      On information and belief, most of the as-yet unidentified John (or Jane) Doe Defendants reside within the State of Minnesota and are subject to this Court's jurisdiction and venue.

## STATEMENT OF CLAIM
## PLANT VARIETY PROTECTION REGISTRATION

8.      This action arises under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.,* which provides patent-like protection to breeders of certain varieties, and their assignees, who may acquire the right to prevent others from selling the variety for a period of twenty (20) years. On March 18, 2014, the University applied to the Plant Variety Protection Office pursuant to § 2481 of the PVPA for protection of a novel variety of oat it had developed known as the "Deon" oat variety.

9.      On March 13, 2015, a Plant Variety Protection (PVP) Certificate for the Deon variety was issued to the University pursuant to 28 U.S.C. § 2482 in the name of the United States of America under the seal of the Plant Variety Protection Office and was recorded in the Plant Variety Protection Office. The duration of a PVP Certificate is twenty (20) years from the date of issuance, 7 U.S.C. § 2483(b)(1), and Certificate No. 201400243 is not scheduled to lapse until March 14, 2035.

10.     The PVP Certificate of Protection for Deon is attached as Exhibit 1.

11.     The PVP Certificate of Protection for Deon specified that the seed of the respective varieties could only be sold in the United States as a class of certified seed, meaning that before sale the seed had to be certified by an approved governmental or private agency as to

variety and purity. This added step is known as a "Title V Election" under the Federal Seed Act, 7 U.S.C. § 1611. *See also* 7 U.S.C. § 2483(a)(2)(A).

12.     The PVP Certificate of Protection for the Deon oat variety was and remains in full force and effect.

13.     Defendants had actual notice and knowledge that the Deon oat variety, among others, was federally protected by the PVPA.

14.     Section 2541 of the PVPA provides that it is an infringement of the owner's rights in a protected variety, *inter alia*, to sell the variety without authorization of the owner or to dispense the variety to another in a form that can be propagated without notice that it is a protected variety.

15.     Section 2541 provides that it is an infringement to use the variety for propagation without authority; to stock, condition, ship, or consign the protected variety without authority; or to instigate or actively induce any act that constitutes an infringement.

16.     The PVPA provides in § 2561 that an owner shall have a remedy by civil action for infringement of plant variety protection and that if the variety is sold under the name of the variety shown in the certificate, there is a prima facie presumption that the seed in the bag or lot is the protected variety.

17.     Under § 2562 of the PVPA, a PVP Certificate of Protection is presumed to be valid.

18.     Section 2563 of the PVPA provides that a court may grant an injunction to prevent violations of rights under the PVPA. Section 2564 of the PVPA provides that upon a finding of infringement the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty together with interest and costs.

Section 2564 also provides that the court may increase the damages up to three times the amount determined and, in exceptional cases, the court may award reasonable attorney's fees to the prevailing party under § 2565.

19.     Section 2543 of the PVPA provides a crop exemption for growers and other persons that permits a bona fide sale of a protected variety into usual grain channels, but § 2543 does not exempt from PVPA protection the sale of grain of a protected variety for use as seed for reproductive purposes without the authorization of the owner.

20.     Section 2543 further provides that if a purchaser diverts grain from usual grain channels to use for reproductive purposes, that purchaser is deemed to have notice under § 2567 that its actions constitute an infringement of § 2541 for purposes of a damages action by the owner.

21.     Defendants operate a seed production and storage operation in or around Jeffers, Minnesota. Defendants obtained the Deon oat variety and planted the federally protected variety on holdings or leased premises and thereafter harvests the oat seed at the conclusion of the growing season.

22.     Rather than tending the harvest as grain as part of normal grain channels, the Defendants illegally divert such seed to other channels, including for sale in a condition that will propagate if planted.

23.     State seed laws specify seed labeling requirements that include identification of the variety and information about the batch obtained through seed testing such as the seed's purity, its germination rate, and the percentage by weight of any impurities. Defendants do not comply with standards of testing, but Defendants do perform initial testing and have reported a high test weight. Defendants also declared the seed was only "one year off of certification."

5

24.     It is an infringement to sell seed in a form that can propagate, and the PVPA standard labels Plaintiff uses clearly states "UNAUTHORIZED PROPAGATION PROHIBITED." All certified seed sold under authorization of Plaintiff bears this prominent notice.

25.     On information and belief, Defendants obtained Deon seed stock on one or more occasions. Insofar as such acquisition(s) were of uncertified Deon seed, then such acquisition(s) constitutes an illegal act under the PVPA.

26.     Defendants, as experienced producers and operators of complex agricultural businesses, were fully aware of the strict protocols and requirements necessary before Title V, PVPA-protected oats may be sold legally for seeding purposes.

27.     Defendants knowingly ignored such legal requirements and sold the Deon oat seed to other distributors and producers without undergoing field inspection, without submitting seed samples for testing, without certification, and without reporting plantings, yields, or sales to the appropriate authorities.

28.     By ignoring such legal requirements, Defendants sought to enhance profits by avoiding costs of inspection, testing and certification, and payment of the required royalties owed to Plaintiff for every sale of Deon oat seed.

29.     Defendants sold the Deon variety, among others, without restriction to other growers and without authority from Plaintiff. The acts of selling the seed without authority constitute illegal sales of the protected varieties in violation of the PVPA.

30.     Defendants sold the protected varieties to other distributors and growers without proper labeling and without the necessary certifications of the official state quality control systems. The foregoing refusals to properly mark and to obtain certification of the protected

varieties in connection with transfers to distributors and growers constitute separate violations of the PVPA.

31.     At all times relevant, Plaintiff only authorized sales of Deon variety oat seed with written notice containing statutorily designated language signifying that the seed was protected under the PVPA, that unauthorized propagation or multiplication of the seed was prohibited, and that the use of the seed by the purchaser was authorized only for purposes of growing a commercial crop of grain.

32.     Plaintiff required such notice on all bags of Deon oat seed sold and on notices accompanying all bulk sales of such oat seed. In addition, Plaintiff consistently and prominently marked the Deon variety with statutory PVPA notices on its marketing and promotional materials for such varieties.

33.     Defendants sold the grain which had been diverted from usual grain channels through a practice known as "brown bagging," in which a person or entity uses grain grown from proprietary seed and prepares it for use as seed without authorization of the owner of the proprietary seed. In some areas of the country, the grain is repackaged in seed bags, often brown, and the infringer sells the grain under the name of the variety from which the grain was grown. In Minnesota, it is more typical to make an unauthorized sale of the grain in bulk or packaged in bulk bags.

34.     Defendants identity-preserved the Deon variety harvested from the fields owned by Defendants or by agents and customers, and Defendants thereafter sold the grain for use as seed to other distributors and growers.

35.     Plaintiff secured evidence of Defendants' sales and offers for sale of the uncertified Deon oat seed to an investigator.

36.     In this case, Defendants sold illegal seed in bulk bags or directly provided the

seed into trailers and other storage means, including the large bulk bags, (shown below following

the purchase by an investigator of the Deon oats from Defendants):



37.     During Plaintiff's pre-litigation investigation, Plaintiff obtained records of

Defendants' advertising efforts on Craigslist to sell illegal Deon oats.

38.     Defendants specifically informed the investigator the oats were the "Deon"

variety and further proclaimed a high test weight.

39.     At no time were Defendants authorized to sell Deon variety for reproductive

purposes.

40.     Defendants resold the grain without giving notice that the seed was subject to

PVPA protection, without giving notice of the identity of the PVP Certificate holder, and without

giving notice of any other restrictions to prevent purchasers of the seed from further replicating

it.

41.     Defendants are understood to have sold a substantial quantity of Deon oats for propagation purposes in recent years.

42.     Defendants' unrestricted sale of the protected Deon oats placed Plaintiff at great risk of harm since each bushel of seed sold by Defendants can be planted, harvested, and replanted to produce over 4,000,000 fifty-pound bags of seed in just five generations.

43.     Defendants' unauthorized sales also placed the reputation of the protected varieties at risk since they were sold without the rigorous production standards employed by Plaintiff and without the certification by a governmental or approved private entity, which is required for Deon oats for sale as seed.

44.     Defendants are deemed under § 2543 of the PVPA to have had notice that their acts in diverting the Deon oats from normal grain use to use as seed for reproductive purposes constituted an infringement of Plaintiff's rights under the PVPA.

45.     Defendants had, prior to infringing, actual and constructive knowledge that the Deon variety was federally protected by law by virtue of their extensive experience as producers and operators of commercial agricultural businesses, yet they willfully disregarded the law and sold the varieties without adequate quality control, without restrictions against replanting, without payment of any royalty due, and without providing any downstream buyers with the required statutory notices that serve to protect the integrity of the varieties.

46.     Defendants understand the majority of seed sold legitimately in Minnesota is subject to PVPA protection, and they had ready access to information as to the PVP status of the Deon variety, among others.

47.     Seed cleaning is one form of seed conditioning, which is one of the acts specifically enumerated in the PVPA from which infringement liability may arise. As part of the

9

illegal seed operation, Defendants clean (i.e., condition) the unauthorized seed in preparation for reselling it to third party customers for propagation purposes. Such conditioning is not related to the farmers' saved exemption under 7 U.S.C. § 2543 and is therefore a distinct violation under the PVPA.

48.     Discovery is anticipated to produce additional information on the extent and nature of the illegal seed distribution network and is likely to reveal additional protected crop varieties being sold without authority much in the same way as shown by the specific examples involving the Deon oats, and likely other oat varieties owned by Plaintiff.

## COUNT I

## DAMAGES FOR INFRINGEMENT OF § 2541(a) OF THE PVPA

49.     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

50.     Without authorization from Plaintiff, Defendants stocked the Deon variety for propagation purposes in violation of the PVPA.

51.     Without authorization from Plaintiff, Defendants conditioned the Deon variety for propagation purposes in violation of the PVPA.

52.     Without authorization from Plaintiff, Defendants sold the Deon variety for the purpose of propagation in violation of the PVPA.

53.     Without authorization from Plaintiff, Defendants dispensed the Deon variety in a form which can be propagated, without restriction to other growers, in violation of the PVPA.

54.     Without authorization from Plaintiff, Defendants instigated and actively induced infringement under the PVPA by engaging in the illegal seed business described above, in violation of the PVPA.

55.     Defendants' actions constitute an infringement of Plaintiff's rights under § 2541 of the PVPA for which all Defendants, including Defendants John Doe 1-50, are accountable in damages.

56.     On information and belief, Defendants engaged in similar illegal and unauthorized behavior involving other oat and barley varieties.

57.     As a result of Defendants' actions, Plaintiff has suffered harm for which it is entitled to damages, including without limitation:

a)      Compensation for the Defendants' unauthorized sale, use, and conditioning of the Deon variety, and others, in an amount not less than a reasonable royalty;

b)      Damage to Plaintiff's reputation or the reputations of the Deon variety, and others, by the unauthorized sale of said varieties which were not produced in accordance with Plaintiff's practices and standards; and

c)      Expenses incurred or reasonably expected to be incurred as a direct result of Plaintiff's actions to recover seed or grain grown from Defendants' unauthorized purchase, use, and sale of seed, and/or expenses incurred in identifying and notifying persons who purchased the Deon variety, and others, from Defendants that such seed was not produced by or in accord with the standards of Plaintiff and that any grain grown from such seed is protected by the PVPA, cannot be grown for any purpose other than as commercial grain crop, and cannot be held out to the consuming public as Deon oats.

## COUNT II

### INJUNCTION PURSUANT TO § 2563 OF THE PVPA

58.     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

59.     Plaintiff is entitled to injunctive relief pursuant to § 2563 of the PVPA as follows:

a)      Permanently enjoining any further sales or other disposition by Defendants of grain grown from Plaintiff's PVPA-protected varieties, including the Deon variety, and others, for reproductive purposes;

b)      Requiring the ultimate destruction of all Deon oats, and others, in Defendants' possession or control to prevent future illegal harvests from being replanted;

c)      Allowing for access to Defendants' facilities and premises, including leased lands, to identify the scope of the infringing conduct at a time when the crops remain in the field, thereafter permitting the crops to grow, harvest, and then store in constructive trust while the suit proceeds;

d)      Requiring the disclosure of the names and addresses of all persons or entities who purchased oat seed from, supplied oat seed to, conditioned oat seed for, or stored oat seed for or with Defendants, to allow the parties to identify the scope of the illegal replanting and allow the parties sufficient time to give adequate notice to those Defendants John Doe 1-50 of their opportunity to be heard, with the ultimate goal to allow the crop, once identified, to be harvested and stored in constructive trust while the suit proceeds; and

d)      Requiring an accounting of all revenues and profits Defendants derived from the sale, use and conditioning of Plaintiff's protected varieties, including but not limited to Plaintiff's Deon variety oats.

## COUNT III

### TREBLE DAMAGES AND ATTORNEYS' FEES

60.      Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs.

61.      Defendants knew or recklessly disregarded the fact that by brown bagging the grain in question and selling it for reproductive purposes they were infringing federal intellectual property rights.

62.      Defendants knowingly sold the brown-bagged seed at a substantial discount compared to the price authorized dealers charged for legitimate seed. They intentionally set their pricing to divert sales from authorized dealers for their own profit.

63.      Defendants knowingly and intentionally caused substantial damage to Plaintiff and recklessly placed Plaintiff at substantial risk of further misuse of its seed by placing the seed in commerce without notice of its protected status.

64.     As the result of Defendants' actions, Plaintiff has incurred substantial damages, attorney's fees, and costs and will in the future incur additional damages, attorney's fees, and costs.

65.     Defendants' actions constitute an exceptional case for which the award of attorney's fees and costs are recoverable pursuant to § 2565 of the PVPA.

66.     Treble damages are appropriate pursuant to § 2564 of the PVPA.

## NO JURY DEMAND

67.     Plaintiff does not seek a jury trial.

## IMPORTANT NOTICE TO DEFENDANTS TO PRESERVE EVIDENCE

68.     Defendants are legally obligated to take reasonable steps to preserve evidence. This evidence preservation duty applies to all documents, tangible things and electronically stored information ("ESI") potentially relevant to the issues in this cause, including but not limited to seed samples, stored grain, farming records, sales receipts, purchase receipts, scale tickets, and accounting information in paper or ESI format. ESI includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as: digital communications (e.g., e-mail, voicemail, text messages, instant messages); word processing documents (e.g., Word or WordPerfect documents and drafts); spreadsheets and tables (e.g., Excel or Lotus 123 worksheets); accounting application data (e.g., QuickBooks, Money, Peachtree data files); image and facsimile files (e.g., .PDF, .TIFF, .JPG, .GIF images); sound recordings (e.g., .WAV and .MP3 files); video and animation (e.g., .AVI and .MOV files); and databases (e.g., Access, Oracle, SQL Server data, SAP).

## RELIEF DEMANDED

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

13

a)      Awarding Plaintiff compensation for damages resulting from the infringement in an amount not less than a reasonable royalty, and trebled;

b)      Ordering permanent injunctive relief:

    i.      Directing Defendants to make no further sales for reproductive purposes of any seed for which Plaintiff holds PVPA protection without express authorization from Plaintiff;

    ii.     Directing Defendants to identify all fields on which they are cultivating a current oat crop and all locations where they are storing oats to allow Plaintiff to identify the extent of the infringement prior to when Defendants harvest and permanently remove the harvest, thereby ordering that there be no spoliation of evidence because such evidence is necessary to assess the true extent of infringement; and

    iii.    Requiring Defendants to account for all acquisitions, uses and sales of PVPA-protected seed of Plaintiff, including the names and addresses of all suppliers and purchasers and the quantity so purchased or sold;

c)      Awarding pre-judgment and post-judgment interest;

d)      Awarding Plaintiff its attorneys' fees, costs, and expenses incurred in this action; and

e)      Awarding such other relief as the Court may deem just and proper.

Dated:  April 9, 2020                              DOUGLAS R. PETERSON
                                                   General Counsel
                                                   University of Minnesota


                                                   By:_s/ Timothy J. Pramas_____
                                                   Timothy J. Pramas (# 240321)
                                                   Senior Associate General Counsel
                                                   360 McNamara Alumni Center
                                                   200 Oak Street S.E.
                                                   Minneapolis, MN 55455
                                                   Telephone: (612) 624-4100
                                                   Fax: (612) 626-9624
                                                   pram0001@umn.edu



                                                   and

14

Of Counsel:

Mark Murphey Henry (Ark. #97170)
HENRY LAW FIRM
P.O. Box 4800
Fayetteville, AR 72702
Telephone: (479) 368-0555
mark@henry.us
*Applying Pro Hac Vice*

Attorneys for Plaintiff Regents of the
University of Minnesota